# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF NORTH CAROLINA

MICHELLE BRIEF-MCGURRIN,       )
)
          Plaintiff,       )   Case No. 1:18-CV-00131
)
      v.          )   Hon. Loretta C. Biggs
)
CISCO SYSTEMS, INC., RANDSTAD   )   Magistrate Judge L. Patrick Auld
NORTH AMERICA, INC., RANDSTAD US,  )
LLC, RANDSTAD PROFESSIONALS US,  )
LLC,              )
)
          Defendants.

## RANDSTAD DEFENDANTS' AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Randstad North America, Inc., Randstad US, LLC, and Randstad Professionals US, LLC d/b/a Randstad Sourceright (collectively, "Randstad")[1] by their counsel and pursuant to Fed. R. Civ. P. 8, 12, and 15, hereby submit their amended answer to Plaintiff's Second Amended Complaint (Doc. 31) and set forth their Affirmative Defenses as follows:

## PRELIMINARY STATEMENT

Plaintiff Michelle Brief-McGurrin is a successful recruitment professional with over twenty years of experience in sourcing qualified employment candidates for corporate clients. In particular, Mrs. McGurrin's professional focus has been dedicated to the recruitment and employment of qualified African-American applicants and other People of Color who are marginalized and excluded *en masse* from the Science, Technology, Engineering, and Math ("STEM") industries. In the course of her joint employment with Randstad and Cisco, and in particular during the final year of employment, Mrs. McGurrin met unyielding resistance against the performance of her job duties, which principally encompassed candidate recruitment from minority communities. Mrs. McGurrin increasingly vocalized her objections and complaints to the ways in which minority candidates were systematically overlooked in sourcing for Cisco jobs, culminating in her refusal to omit key recruitment data from Cisco internal publications; data that would have cast a light on the feigned efforts Cisco had undertaken to recruit African-

---

[1] Plaintiff improperly named Randstad North America, Inc. and Randstad US, LLC as Defendants. Neither of these entities employed Plaintiff and neither operates as a "d/b/a" for Randstad Professionals US, LLC. *See* Declaration of Heather Amato (Doc. 1-2, ¶ 6.) Plaintiff does not address which of these entities employed her in the Second Amended Complaint and instead groups all Randstad entities together. *See* Second Amended Complaint (Doc. 31, ¶ 3.)

American and other qualified minority candidates. These objections, in conjunction with the fact that she did not comport with the young, Caucasian female work environment in which she worked, led ultimately to her termination from employment with Randstad and Cisco on January 26, 2015. While Cisco characterized her unceremonious termination as a "layoff," Cisco deviated from its typical layoff policies and quickly locked Mrs. McGurrin out of her laptop, intranet access, and blocked her reemployment within other departments of Cisco's enterprise. Randstad failed to engage in a meaningful investigation into Mrs. McGurrin's termination following her complaints regarding the events giving rise to her termination, including her complaints regarding Cisco's efforts to manipulate data regarding minority job applicants. In fact, Randstad's investigation, and its subsequent efforts to find other positions with Cisco, were not genuine attempts at corrective action, and were instead designed to coerce Mrs. McGurrin into contracting away her rights.

**ANSWER:**

Randstad admits that it formerly employed Plaintiff. Randstad denies that it terminated Plaintiff's employment. Randstad denies the remaining allegations in the Preliminary Statement specifically directed against it, including the allegations regarding its alleged failure to conduct a "meaningful investigation" following Plaintiff's "termination," that Plaintiff made any "complaints" to Randstad or about which Randstad was aware prior to the end of her assignment, that Randstad's efforts to identify other positions for Plaintiff were "not genuine," and that such efforts were "designed to coerce [Plaintiff] into contracting away her rights." With respect to the allegations against Defendant Cisco, no answer is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in the Preliminary Statement and, therefore, denies those allegations.

## JURISDICTION AND VENUE

**COMPLAINT ¶1:**

Plaintiff Michelle Brief-McGurrin (hereinafter "Plaintiff" or "Mrs. McGurrin") is an African-American female citizen and resident of Wake County, North Carolina. At the time of Plaintiff's termination from Defendants' employment she was forty-seven years of age.

**ANSWER:**

Randstad admits that Plaintiff is an African-American female and that her employment with Randstad ended as a result of her resignation. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 of Plaintiff's Second Amended Complaint (the "Complaint") and, therefore, denies those allegations.

**COMPLAINT ¶2:**

Defendant Cisco Systems, Inc., (hereinafter "Cisco") is a corporation organized under the laws of the State of California, with its principal place of business located at 170 West Tasman Drive, San Jose, California 95134. Cisco is licensed to conduct business in the State of North Carolina and maintains a place of business located at 7100 Kit Creek Road in Morrisville, North Carolina in Wake County. Cisco is a global business that employs more than 500 people engaged in the business of designing and selling a broad range of technologies.

**ANSWER:**

Paragraph 2 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶3:**

Defendant Randstad North America, Inc., Randstad US, LLC, and Randstad Professionals US, LLC, (hereinafter "Randstad") are corporations organized under the laws of the State of Delaware, with their principal place of business located at 150 Presidential Way, Woburn, Massachusetts 01801. Randstad is licensed to conduct business in the State of North Carolina and maintains a place of business located at 4505 Emperor Boulevard, Durham, North Carolina in Durham County. Randstad is a global business employing more than 500 people and is principally engaged in the business of temporary staffing and workforce management.

**ANSWER:**

Randstad admits that Randstad Professionals US, LLC is organized under the laws of the State of Delaware, it is licensed to conduct business in the State of North Carolina, and it employs more than 500 persons. Randstad also admits that Randstad Professionals US, LLC maintains a place of business located at 4505 Emperor Boulevard in Durham, North Carolina. Randstad denies that Randstad North America, Inc. and/or Randstad US, LLC employed Plaintiff

- 3 -

and that they are proper parties to this litigation. Randstad also denies the remaining allegations in Paragraph 3 of the Complaint.

**COMPLAINT ¶4:**

Cisco and Randstad (hereinafter collectively "Defendants") employed Plaintiff to perform the duties of Diversity Sourcing Manager as a common law employee at all times relevant to this Complaint.

**ANSWER:**

Randstad denies the allegations in Paragraph 4 of the Complaint.

**COMPLAINT ¶5:**

Plaintiff is asserting claims arising under Title VII of the Civil Rights Act of 1964 (Title VII) as amended by the Civil Rights Act of 1991 as set forth in 42 U.S.C. § 2000e, *et seq.* This action is brought under 42 U.S.C. § 1981 (Reconstruction Era Statutes). Additionally, Plaintiff asserts a claim of wrongful discharge under North Carolina law.

**ANSWER:**

Randstad admits that Plaintiff purports to allege violations of Title VII of the Civil Rights

Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section

1981"), and wrongful discharge in violation of North Carolina public policy, but denies that it

violated Title VII, Section 1981, or North Carolina law and also denies that Plaintiff is entitled to

any relief whatsoever. Randstad denies the remaining allegations in Paragraph 5 of the

Complaint.

**COMPLAINT ¶6:**

Plaintiff seeks monetary relief, compensatory damages, and punitive damages pursuant to 42 U.S.C. § 2000e, 42 U.S.C. § 1981a, and North Carolina law.

**ANSWER:**

Randstad admits that Plaintiff seeks the relief specified in Paragraph 6 of the Complaint,

but denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

- 4 -

**COMPLAINT ¶7:**

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), designated as EEOC Charge No. 433-2015-02044.

**ANSWER:**

Randstad admits the allegations in Paragraph 7 of the Complaint.

**COMPLAINT ¶8:**

On March 30, 2018, the EEOC issued a Notice of Right to Sue for Randstad. Plaintiff received this Notice of Right to Sue on April 5, 2018.

**ANSWER:**

Randstad admits that the EEOC issued a Notice of Right to Sue with respect to Randstad on March 30, 2018. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the allegation about when Plaintiff received this Right to Sue and, therefore, denies that allegation.

**COMPLAINT ¶9:**

On June 1, 2018, the EEOC issued a Notice of Rights to Sue for Cisco. Plaintiff received this Notice of Right to Sue on June 5, 2018.

**ANSWER:**

Randstad lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 9 of the Complaint and, therefore, denies those allegations.

**COMPLAINT ¶10:**

Plaintiff has exhausted her administrative remedies.

**ANSWER:**

Randstad lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint and, therefore, denies those allegations.

44573100v.3

**COMPLAINT ¶11:**

Venue is proper before this Court pursuant to 28 U.S.C. § 1391. Personal and subject matter jurisdiction are proper before this Court pursuant to 42 U.S.C. § 2000e, 42 U.S.C. § 1981, 28 U.S.C. § 1337 and 28 U.S.C. § 1343(a).

**ANSWER:**

Randstad admits that venue is proper in this Court. Randstad also admits that this Court

has jurisdiction over the claims alleged in and the parties to this action, but Randstad denies that

Randstad North America, Inc. and/or Randstad US, LLC employed Plaintiff and that they are

proper parties to this litigation. Randstad denies the remaining allegations in Paragraph 11 of the

Complaint.

**COMPLAINT ¶12:**

This court should assume supplemental jurisdiction of Plaintiff's state law claims for wrongful discharge under 28 U.S.C. § 1367 because these claims are based upon the same operative facts as the discrimination claims over which the court has jurisdiction, and judicial economy, convenience, and fairness to the parties demand that the court assume and exercise jurisdiction over all the claims alleged herein.

**ANSWER:**

Randstad admits that the Court should assume supplemental jurisdiction over Plaintiff's

state law claim pursuant to 28 U.S.C. § 1367, as the state law claim is part of the same case or

controversy as Plaintiff's federal claims, does not raise novel or complex issues of state law, is

based on the same alleged facts as her federal claims, and does not predominate over the claims

falling within this Court's original jurisdiction. Randstad denies the remaining allegations in

Paragraph 12 of the Complaint.

**STATEMENT OF FACTS**

**COMPLAINT ¶13:**

Throughout Plaintiff's employment, Plaintiff earned high performance reviews and did not receive complaints, discipline, or warnings by her superiors with regards to the completion of her job duties.

**ANSWER:**

Randstad admits that Plaintiff received performance reviews for the 2010 and 2012

review periods only, and denies the remaining allegations in Paragraph 13 of the Complaint.

**COMPLAINT ¶14:**

During Plaintiff's employment with Defendants, she was characterized by Defendants as a contractor. However, throughout her period of employment, Plaintiff held the legal status of a common law employee with regards to her joint employment relationship with Defendants.

**ANSWER:**

Randstad denies the allegations in Paragraph 14 of the Complaint.

**COMPLAINT ¶15:**

Prior to accepting her initial offer from Cisco, Plaintiff was informed by Tracy Leonard, Human Resources Manager, that she would be temporarily payrolled through Randstad until a "headcount" expansion was approved by Cisco, which would allow Plaintiff to be formally characterized as an employee under Cisco's internal records. Accordingly, Plaintiff developed a reasonable expectation that she would be "converted" to an employee under Cisco's classification shortly after beginning her work with the same.

**ANSWER:**

Paragraph 15 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶16:**

Plaintiff remained payrolled through Randstad for the entirety of her employment with Defendants. Randstad also retained the authority to hire and fire Plaintiff throughout her employment with Defendants, and maintained authority to discipline Plaintiff for performance-related issues. At all times while working for Defendants, Plaintiff reported to supervisors at both Randstad and Cisco—Amy Laymon and Julie Turner at Randstad, and Mark Woodrum, Anne Grassian and others at Cisco.

**ANSWER:**

Randstad admits that it paid Plaintiff during her employment with Randstad Professionals

US, LLC d/b/a Randstad Sourceright and through her voluntary resignation in October 2015.

Randstad also admits that it had authority to hire and fire Plaintiff from her employment with

Randstad and that it could discipline Plaintiff for certain issues. Randstad further admits that Amy Laymon was Plaintiff's point of contact at Randstad during Plaintiff's temporary assignment with Cisco until approximately April of 2014 and that Julie Turner was Plaintiff's point of contact at Randstad during Plaintiff's temporary assignment with Cisco from approximately April of 2014 through the end of that assignment. With respect to the allegations of the identity of Plaintiff's Cisco supervisors, no answer is required pursuant to Fed. R. Civ. P. 8(b)(1)(B). Randstad denies the remaining allegations in Paragraph 16 of the Complaint.

**COMPLAINT ¶17:**

In June 2010, Plaintiff began working with Cisco's Talent Acquisition organization performing work as a Sales Recruiter. She continued her work until on or about July 2013, when after receiving significant recognition for her work promoting diversity in recruiting, she was promoted to Cisco's University Relations ("UR") group, which was housed within the same Cisco Talent Acquisition organization in which she had been working.

**ANSWER:**

Paragraph 17 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶18:**

In the Fall of 2014, Plaintiff was assigned a Sourcing Manager Position with a focus on increasing minority candidate pools in all business units. In Plaintiff's role as Sourcing Manager, she was assigned three direct reports and received access to confidential Cisco internal data sources.

**ANSWER:**

Paragraph 18 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶19:**

Despite these indications of growing responsibility and valued contributions, Plaintiff's position was never formally converted to a Cisco employee. The Caucasian Randstad contractors who began work at Cisco at or around the same period of time as Plaintiff were

converted to Cisco employees. Moreover, numerous Caucasian Randstad contractors that began working at Cisco after Plaintiff were converted to full-time employees.

**ANSWER:**

In response to the allegations in Paragraph 19 of the Complaint, Randstad affirmatively states that it employed Plaintiff as a temporary employee ("Talent") and that she was placed on various assignments including at Cisco. Randstad admits that Plaintiff was not converted to a regular full-time employee of Cisco. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 18 of the Complaint, including the allegations regarding unidentified Randstad employees, and, therefore, denies those allegations.

**COMPLAINT ¶20:**

In Fall of 2014, Plaintiff asked her direct supervisor, Anne Grassian, why Ms. Grassian's supervisor, Mark Woodrum, did not convert Plaintiff's position. Ms. Grassian responded, "for some reason he only wants to convert the [University Management ("UM")] girls." Cisco's UM team was led by Mr. Woodrum and was tasked with maintaining relationships and leading recruitment efforts with specific universities. This team was similarly comprised of many Randstad/Cisco contractors. At all times relevant to this complaint, the UM team predominately consisted of young, Caucasian females.

**ANSWER:**

Paragraph 20 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶21:**

Furthermore, in Fall of 2014, Plaintiff was informed by Mr. Woodrum that there would be a UM position with North Carolina State University ("NC State") opening in several months and that Plaintiff would be considered for that role. This position would "convert" her to a Cisco employee. Plaintiff already had a positive professional relationship with NC State due to her prior and current work with that university.

**ANSWER:**

Paragraph 21 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶22:**

When the position became open, on or about Spring 2015, Plaintiff contacted Mr. Woodrum regarding the same. Mr. Woodrum responded that he was travelling, but would interview Plaintiff for the position upon his return. However, Plaintiff was refused an interview and shortly thereafter Plaintiff was contacted via email from Mr. Woodrum and told that he had promised the same position to Kiley Dove, a less qualified Caucasian female under 35 years of age.

**ANSWER:**

Paragraph 22 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶23:**

Within a few days from receiving the email from Mr. Woodrum, Plaintiff complained to Ms. Grassian about being denied an interview for the position, to which Ms. Grassian responded that Mr. Woodrum had a habit of showing favoritism in hiring young, less experienced Caucasian females on Cisco's UM team and that this was "classic Mark Woodrum" behavior.

**ANSWER:**

Paragraph 23 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶24:**

Moreover, soon after Plaintiff's transition to the UR team, she began to identify systemic problems with Cisco's minority recruitment efforts. Cisco was not following-up on top African-American and other minority candidates, top African-American candidates' resumes were inexplicably lost, and Cisco's participation in minority recruitment events were surface level and failed to communicate a sincere interest in engaging African-American and other minority candidates for potential employment.

**ANSWER:**

Paragraph 24 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶25:**

For example, Plaintiff's supervisors, Mr. Woodrum and Ms. Grassian, frequently prevented Plaintiff from recruiting from Historically Black Colleges and Universities ("HBCUs") by restricting funds and delaying commitment to supporting and planning of

recruiting events. Plaintiff was told that the recruitment from HBCUs was not as effective at sourcing qualified candidates. and that the ERG (the employee resource group for AA) always went and showed Cisco's presence. Plaintiff complained that this did not result in direct hiring through talent acquisition as it happened in non-HBCU schools, and that the timing would not be successful prior to Cisco's openings being filled. Plaintiff did not receive a response.

**ANSWER:**

Paragraph 25 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶26:**

On other occasions in which Plaintiff was authorized to recruit from HBCUs, Cisco only approved Plaintiff to go to HBCU recruiting events late in the hiring season, in March or April, which significantly limited the population of competitive candidates. For college recruiters, the most effective window of time for candidate recruitment is typically between October and December. By the spring semester, the most competitive college seniors have already received and accepted offers by other employers.

**ANSWER:**

Paragraph 26 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶27:**

By contrast, at all times relevant to this Complaint, the UM Team conducted vigorous, year-long recruitment efforts at colleges and universities with majority Caucasian populations such as Stanford, Duke, and Virginia Tech.

**ANSWER:**

Paragraph 27 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶28:**

In another example, between the months of September and December 2014, Plaintiff repeatedly complained to Mr. Woodrum and Ms. Grassian that a Caucasian male engineer had been tasked with representing Cisco at recruiting events for the National Society of Black Engineers ("NSBE"). Similarly, a Caucasian male was tasked with representing Cisco at recruitment events for the Society of Women Engineers ("SWE"). In both examples, Plaintiff complained that the individuals were not demographically representative of the population pool they were seeking to recruit from, that they did not understand the recruiting process or industry

timelines, and that they were unable to commit to an adequate level of attendance at events. Plaintiff complained that these factors would cause Cisco to have lower recruitment from African-American and other minority communities.

**ANSWER:**

Paragraph 28 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶29:**

In Fall of 2014, a systemic backlog of follow-ups with minority candidates by the Cisco Talent Acquisition team exacerbated overall minority recruitment by preventing the minority candidates from moving through the job-placement pipeline. Plaintiff's team reached out to minority candidates, determined if they were qualified for open positions, asked them to apply for the same, and promised that Plaintiff's team would follow-up within a week or two. For months, Plaintiff complained to Ms. Grassian and Mr. Woodrum on weekly team calls that Cisco was not following-up with these candidates.

**ANSWER:**

Paragraph 29 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶30:**

Plaintiff complained regularly that they were making commitments to strong African-American and other minority candidates and that Mr. Woodrum's team was not following-up with them; Plaintiff would not get a response or next steps solutions from Ms. Grassian.

**ANSWER:**

Paragraph 30 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶31:**

During this time, under the leadership of Karen Morris, Vice President of Human Resources, Plaintiff developed key initiatives aimed at improving minority recruitment, such as "on-site recruiting days," where Plaintiff and other Cisco representatives would build relationships with university faculty and minority student associations and then invite a number of students to Cisco's campus for a day of pitching the value of Cisco as a place to work.

44573100v.3

**ANSWER:**

Paragraph 31 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶32:**

On or about September 2014, Plaintiff complained to Ms. Grassian and Mr. Woodrum about the rollback of the on-site recruit day initiative. Plaintiff explained that they had already developed relationships with relevant stakeholders and cancelling this initiative would further hinder progress in minority recruitment. Plaintiff's complaints were ignored by Ms. Grassian and Mr. Woodrum.

**ANSWER:**

Paragraph 32 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶33:**

On or about late November 2014, Ms. Grassian met with Plaintiff to discuss the possibility of not bringing back Plaintiff's co-worker, Heather Ransome, for the next season. Ms. Grassian stated to Plaintiff that she was unsure whether Julie Vargo, Human Resources Manager, would have sufficient funding for Ms. Ransome's role. Plaintiff asked Ms. Grassian whether Plaintiff's own job was in jeopardy because of funding issues. Ms. Grassian reassured Plaintiff that her job was safe at least until the end of the following fiscal year in August 2015.

**ANSWER:**

Paragraph 33 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶34:**

On or about early December 2014, Ms. Grassian and Plaintiff again met to discuss Ms. Ransome's role at Cisco. Plaintiff again asked for reassurance about Plaintiff's role at Cisco. Ms. Grassian again said her job was safe for the current fiscal year, which ended in August 2015.

**ANSWER:**

Paragraph 34 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶35:**

Shortly thereafter, in December 2014, Plaintiff complained to Jill Larsen, Cisco Vice President for Human Resources, regarding Mr. Woodrum's failure to convert her position to an "employee" position. Plaintiff reiterated that Mr. Woodrum and Ms. Grassian's slow follow-up was having a detrimental effect on Cisco's African-American and other minority recruiting efforts.

**ANSWER:**

Paragraph 35 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶36:**

In mid-December 2014, Plaintiff had dinner with Ms. Vargo, Megan Barker, title unknown, and Shana Evans, Project Manager. Plaintiff complained that there were over 80 people "in pipeline" for Shana's roles, but the recruiters had not been acting on them for several months. Plaintiff emphasized that this was negatively impacting Cisco's hiring of African-Americans and other minority applicants.

**ANSWER:**

Paragraph 36 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶37:**

Several days later, Ms. Grassian called Plaintiff and alleged that Plaintiff had "thrown the team under the bus" by complaining to Ms. Vargo about the backlog in the applicant pipeline. Ms. Grassian stated that Ms. Vargo can "fly off on random tangents" and that she was worried about Ms. Vargo sharing this information with others. Ms. Grassian asked Plaintiff if she had sent out any documentation of this problem to Ms. Vargo. Plaintiff indicated that she had not yet.

**ANSWER:**

Paragraph 37 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶38:**

On or about December 2014, Plaintiff was asked by Ms. Grassian to prepare a summary of the Fall 2014 Cisco sourcing team efforts to be presented to Cisco's upper management ("Fall 2014 Referral Summary"). When Plaintiff presented the completed report to Ms. Grassian, Ms.

Grassian asked that Plaintiff revise the same in order to remove crucial data; Ms. Grassian wanted Plaintiff to cover up data that showed only 80 out of 450 (17 percent) of predominately minority candidates that Plaintiff's team had identified as qualified for open Cisco positions were contacted for interviews by Mr. Woodrum's team.

**ANSWER:**

Paragraph 38 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶39:**

Ms. Grassian asked Plaintiff in an email communication to alter the report to only include the number of qualified candidates that received a follow-up, and to exclude the gross number of minority event candidates identified as qualified, thereby concealing the extremely low percentage of follow-ups in this pool of qualified, predominately minority candidates.

**ANSWER:**

Paragraph 39 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶40:**

Plaintiff had never before been asked to cover-up any data when summarizing the general recruitment performance of any other team that she had worked with at Cisco. Plaintiff believed the data she was pressed to omit, revealed a markedly lower percentage of follow-ups from minority events than the percentage of follow-ups on candidates, primarily Caucasian, in Cisco's general recruitment pipeline. At the very least, these recruiting practices resulted in a disparate impact on qualified minority candidates, particularly African-American candidates.

**ANSWER:**

Paragraph 40 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶41:**

On or about December 22, 2014, Plaintiff interviewed for a job with Cisco's Inclusion & Collaboration ("I&C") team. Plaintiff interviewed with Kit Little, who indicated her strong interest in Plaintiff's application. Ms. Little stated Plaintiff's employment was a "done deal" and wanted to move forward with transition discussions. Ms. Little asked that Plaintiff begin working on the first week of January, 2015. Ms. Little shared with Plaintiff that she had contacted Randstad representatives and was told that date at the beginning of January 2015 would not be a problem.

**ANSWER:**

Paragraph 41 of the Complaint does not assert any allegations against Randstad.
Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶42:**

On or about the first week of January, Plaintiff received an email from the I&C team, stating that they would not make an offer and would be going in a different direction. Plaintiff was confused and asked Ms. Grassian if she knew what had happened. Ms. Grassian stated she had no idea and that as far as she was aware, Ms. Little was just confirming the transition date.

**ANSWER:**

Paragraph 42 of the Complaint does not assert any allegations against Randstad.
Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶43:**

Plaintiff received a call that day from a Randstad representative, Julie Turner, and was told that Ms. Grassian would not approve a quick transition to the new role in I&C, and therefore Plaintiff lost the accepted position because I&C needed someone to start in January 2015. Plaintiff spoke with Ms. Grassian who stated she now remembered the conversation with Ms. Little, and when pressed stated she told Ms. Little she would need more time for Plaintiff's transition, and could not let her transition to another position until Summer of 2015.

**ANSWER:**

Randstad lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the conversation between Plaintiff and Grassian and, therefore, denies those allegations. Randstad denies the remaining allegations in Paragraph 43 of the Complaint.

**COMPLAINT ¶44:**

Plaintiff followed up with Julie Turner who stated that she spoke with Amy Laymon and confirmed that Ms. Grassian had no authority to hold me back from getting a new position and that she would update Kit Little. Ms. Laymon stated she would ask Kit Little if the end of January would work for Plaintiff to transition to the team. Plaintiff agreed to that date.

**ANSWER:**

Randstad denies the allegations in Paragraph 44 of the Complaint.

**COMPLAINT ¶45:**

The following week, Plaintiff learned that in contrast to what she had been told, the job for the I&C team was still open and that in fact Ms. Grassian had provided negative feedback regarding Plaintiff's performance to a friend of Ms. Grassian who was part of the I&C global team and knew Ms. Little, which led to the withdrawal of her offer. Plaintiff confronted Ms. Grassian and asked why she had lied about not knowing why the I&C team withdrew their offer and why she had provided negative feedback when Ms. Grassian had never brought up any such issues with Plaintiff. Ms. Grassian listed a few issues in which she believed Plaintiff was tardy or failed to follow-up. Plaintiff addressed each issue in turn and showed that she had indeed performed each of the items Ms. Grassian had referenced as grounds for providing a negative reference. Ms. Grassian conceded that she was wrong, but refused to recant her reference to Ms. Little.

**ANSWER:**

Paragraph 45 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶46:**

On or about January 14, 2015, Plaintiff again confronted Ms. Grassian regarding her request to cover up the follow-up data from the Fall 2014 Referral Summary. Plaintiff reiterated that the lack of follow-up with these candidates was preventing Cisco from hiring qualified African-American and other minority candidates. Ms. Grassian stated that these candidates could be reviewed again in the spring. Plaintiff was upset as she understood this would mean the most competitive candidates would already have found a job before Cisco reached out again, if it all. Plaintiff stated that she believed Cisco would incur some legal risk by covering up the data compiled by this report.

**ANSWER:**

Paragraph 46 of the Complaint does not assert any allegations against Randstad.

Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶47:**

On or about January 14, 2015, Ms. Grassian asked Plaintiff to "disposition" (*i.e.*, end the candidacy) all of the candidates sourced (and not yet interviewed) by Plaintiff's team. Plaintiff refused to do so, as this request would have permanently removed said minority candidates from the recruiting process as they would show in the system as having been interviewed and deemed not qualified for employment with Cisco.

**ANSWER:**

Paragraph 47 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶48:**

Shortly thereafter, on or about January 21, 2015, Ms. Grassian went around Plaintiff and told Plaintiff's team on a call and subsequently in an email that they were to disposition all of the candidates sourced (and not yet interviewed) by Plaintiff's team by the end of January.

**ANSWER:**

Paragraph 48 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

**COMPLAINT ¶49:**

On or about January 26, 2015, Plaintiff was informed that she was terminated from her position with Defendants.  Plaintiff was informed that she was laid off due to lack of funding. However, this ran contrary to Ms. Grassian's promise that Plaintiff's position was safe at least until August of that year.

**ANSWER:**

Randstad denies that it informed Plaintiff she was terminated from her position or that she was laid off due to lack of funding.  Randstad affirmatively states that Plaintiff's temporary assignment with Cisco ended in or about late January 2015 and that Plaintiff remained employed with Randstad.  Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 49 of the Complaint and, therefore, denies those allegations.

**COMPLAINT ¶50:**

Moreover, following Plaintiff's termination, Cisco deviated from its ordinary layoff procedure, which includes allowing laid-off employees a period of time in which to seek other jobs within Cisco and permitting the employee to retain access to their Cisco email account for the same reason.

- 18 -

**ANSWER:**

Randstad denies that the end of Plaintiff's assignment with Cisco was a termination or layoff from her employment with Randstad. Randstad affirmatively states that Plaintiff was offered several additional assignments after her temporary assignment with Cisco ended, that she accepted one of these assignments, and that she resigned her employment with Randstad on or about October 26, 2015. *See* E-mail exchanges between Plaintiff and Randstad employees and Plaintiff's resignation letter, attached hereto as Exhibit 1. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50 of the Complaint and, therefore, denies those allegations.

**COMPLAINT ¶51:**

Following Plaintiff's abrupt termination, Plaintiff was not given the standard amount of time to retain laptop and email access in order to find other jobs within Cisco's enterprise. Instead, Plaintiff was quickly terminated in a fashion typically utilized for terminated employees who have engaged in gross misconduct, posed a threat, or other criminal wrongdoing.

**ANSWER:**

Randstad denies that the end of Plaintiff's assignment with Cisco was a termination of her employment with Randstad. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 51 of the Complaint and, therefore, denies those allegations.

**COMPLAINT ¶52:**

Moreover, Plaintiff's initial reemployment efforts within Cisco were similarly blocked. At Plaintiff's termination, she scheduled an interview with Chris Dempsey from Cisco's Sourcefire team for one of three roles that Mr. Dempsey had open at that time. Mr. Dempsey indicated he was highly interested in Plaintiff's application given her lengthy experience with Cisco, and confirmed he would be offering her a position on his team. This commitment was also confirmed by a member of the SourceFire team, Jon Batts. Mr. Dempsey, in his last conversation with Plaintiff, stated he would be making arrangements to bring the Plaintiff to the SourceFire office in Washington, D.C. the following Monday to begin training. However, following Plaintiff's abrupt disconnection from her laptop and email access, Mr. Dempsey did not respond to Plaintiff's subsequent efforts to maintain contact.

**ANSWER:**

Randstad denies that the end of Plaintiff's assignment with Cisco was a termination of her employment with Randstad. Randstad lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 52 of the Complaint and, therefore, denies those allegations.

**COMPLAINT ¶53:**

Following Plaintiff's termination from Cisco, and her internal efforts to find replacement employment within Cisco, Randstad indicated that it would assist Plaintiff in finding employment, either at Cisco or elsewhere, in addition to investigating the circumstances under which Plaintiff was terminated. Specifically, Amy Laymon informed Plaintiff that she would attempt to find other opportunities within Cisco for Plaintiff.

**ANSWER:**

Randstad admits that, following the end of Plaintiff's assignment with Cisco, Amy Laymon communicated to Plaintiff that she would assist Plaintiff in finding other assignment opportunities with Randstad's clients, including Cisco. Randstad denies that the end of Plaintiff's assignment with Cisco was a termination of her employment with Randstad. Randstad affirmatively states that, following the end of Plaintiff's temporary assignment with Cisco in or about late January 2015, Plaintiff remained employed with Randstad and that Randstad presented numerous assignment opportunities to her including but not limited to the ones in February, March and April 2015 identified in Exhibit 1. *See* Exhibit 1. Randstad further states that Plaintiff accepted and began one of these assignments in or about late May or early June 2015 and subsequently resigned the assignment and her employment with Randstad on or about October 26, 2015. *Id.* Randstad denies the remaining allegations in Paragraph 53 of the Complaint.

**COMPLAINT ¶54:**

On February 4, 2015, Amy Laymon indicated that she would follow up with Brenda Stultz-Roe, Plaintiff's former Cisco supervisor who had expressed interest in hiring Plaintiff, along with a number of other individuals at Cisco. Ms. Laymon informed Plaintiff that she was likely to find a new position within Cisco shortly.

**ANSWER:**

Randstad admits that, following the end of Plaintiff's assignment with Cisco, Amy Laymon communicated to Plaintiff that she would assist Plaintiff in finding other assignment opportunities with Randstad's clients, including Cisco. Randstad denies the remaining allegations in Paragraph 54 of the Complaint.

**COMPLAINT ¶55:**

On February 19, 2015, Ms. Laymon informed Plaintiff that a Cisco employee, Kelly Jones, was investigating her complaint and exploring opportunities for Plaintiff to rejoin Cisco. Ms. Laymon indicated her belief that Cisco would attempt to remedy Plaintiff's termination.

**ANSWER:**

Randstad denies the allegations in Paragraph 55 of the Complaint. Additionally, Randstad denies that Plaintiff's employment was terminated or that the end of her Cisco assignment was a "termination."

**COMPLAINT ¶56:**

On March 1, 2015, Plaintiff followed up with Ms. Jones in order to determine the status of the investigation. Ms. Jones stated that her laptop and access should not have been terminated and she would be looking into it right away. Ms. Jones offered her a couple of weeks additional pay, in order to have time to look for a new role and rectify the situation. Ms. Jones was clear that Woodrum and Grassian had not cleared this action with her, agreed this was highly unusual, and stated she would help to rectify what had been done to Plaintiff. Following that, Ms. Jones did not respond to attempts to follow-up with Plaintiff.

**ANSWER:**

Paragraph 56 of the Complaint does not assert any allegations against Randstad. Pursuant to Fed. R. Civ. P. 8(b)(1)(B), no answer is required.

44573100v.3

**COMPLAINT ¶57:**

On March 10, 2015, Ms. Laymon approached Plaintiff with an offer to work through Randstad directly for a period of several weeks and stated this would lead to more permanent role. The role was initially presented as managing a role with Twitter, and it then became a role recruiting for Twitter. Upon reviewing the contract for the position, Plaintiff discovered the job term was not for several weeks leading to permanent placement, but rather the assignment was only for a few days. Most alarmingly, Plaintiff also discovered the contract was not with Randstad directly nor with Twitter but with Cisco, and included a general release of any claims Plaintiff had against both Randstad and Cisco. Plaintiff declined the position.

**ANSWER:**

Randstad admits that, in or about March 2015, Amy Laymon discussed assignment opportunities with Plaintiff, including an opportunity with Twitter. Randstad denies the remaining allegations in Paragraph 57 of the Complaint.

**COMPLAINT ¶58:**

Sometime in that same week of March 2015, Randstad HR representative Lori Sargent contacted Plaintiff regarding her complaint. Ms. Sargent informed Plaintiff that her role was to represent Plaintiff's interests, and she proceeded to interview Plaintiff. At the end of the call, Ms. Sargent informed Plaintiff that if she contacted an attorney or the Equal Employment Opportunity Commission, Plaintiff would no longer be able to communicate with Randstad HR or work with Randstad in any capacity.

**ANSWER:**

Randstad affirmatively states that Plaintiff e-mailed a letter to Cisco employee Kelly Jones on March 3, 2015 and that Jones forwarded the e-mail on to Amy Laymon. *See* E-mail exchanges regarding Plaintiff's March 3, 2015 letter to Jones, attached hereto as Exhibit 2. Randstad admits that, on or about March 6, 2015, Lori Sargent spoke with Plaintiff regarding Plaintiff's concerns stated in the letter presented to Jones on March 3, 2015 and that Sargent followed up with Plaintiff by e-mail on March 13, 2015. Randstad denies the remaining allegations in Paragraph 58 of the Complaint.

44573100v.3

**COMPLAINT ¶59:**

Cisco's systematic hiring of white female temporary Randstad employees to full time positions, concurrent with its refusal to hire Plaintiff full time, even after a number of years of service at Cisco, was inherently suspect such that Randstad knew or should have known Cisco's hiring practices were discriminatory. Randstad had the information and access to verify all the plaintiff's complaints and evaluate them fairly, but did not follow-up on its promise to investigate.

**ANSWER:**

Randstad denies the allegations in Paragraph 59 of the Complaint.

**COMPLAINT ¶60:**

After Plaintiff's complaint to Randstad, it failed to engage in prompt corrective measures. Instead of engaging in a good faith investigation, Randstad worked with Cisco in attempting to arrange for Plaintiff to contract away her legal rights. Despite assurances of a thorough investigation, Randstad did not seriously investigate Plaintiff's claims.

**ANSWER:**

Randstad denies that Plaintiff made any complaint to Randstad and affirmatively states that Plaintiff's March 3, 2015 letter to Jones was provided to Randstad by Jones and not by Plaintiff. *See* Exhibit 2. Randstad denies the remaining allegations in Paragraph 60 of the Complaint.

**COMPLAINT ¶61:**

As a result of Defendants' discriminatory and retaliatory actions, Plaintiff has suffered and will continue to suffer severe emotional distress and economic damages

**ANSWER:**

Randstad denies the allegations in Paragraph 61 of the Complaint.

**FIRST CAUSE OF ACTION: DISPARATE TREATMENT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866**
**42 U.S.C. § 1981**

**COMPLAINT ¶62:**

The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

**ANSWER:**

Randstad repeats its answers to Paragraph Nos. 1 through 61 of the Complaint as its answer to Paragraph 62 of the Complaint.

**COMPLAINT ¶63:**

Defendants' discrimination against Plaintiff's race, by and through her termination, is in violation of the rights of the Plaintiff as afforded to her by the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

**ANSWER:**

Randstad denies the allegations in Paragraph 63 of the Complaint.

**COMPLAINT ¶64:**

At the time of Plaintiff's termination, she was performing her job duties at a level that met Defendants' legitimate expectations.

**ANSWER:**

Randstad denies the allegations in Paragraph 64 of the Complaint.

**COMPLAINT ¶65:**

By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

**ANSWER:**

Randstad denies the allegations in Paragraph 65 of the Complaint.

**SECOND CAUSE OF ACTION: RETALIATION IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1866**
**42 U.S.C. § 1981**

**COMPLAINT ¶66:**

The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

**ANSWER:**

Randstad repeats its answers to Paragraph Nos. 1 through 65 of the Complaint as its answer to Paragraph 66 of the Complaint.

**COMPLAINT ¶67:**

Defendants' retaliation against Plaintiff's complaints of race discrimination, by and through her termination, is in violation of Plaintiff's rights as afforded to her by the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

**ANSWER:**

Randstad denies the allegations in Paragraph 67 of the Complaint.

**COMPLAINT ¶68:**

At the time of Plaintiff's termination, she was performing her job duties at a level that met Defendants' legitimate expectations.

**ANSWER:**

Randstad denies the allegations in Paragraph 68 of the Complaint.

**COMPLAINT ¶69:**

Plaintiff held an objectively reasonable belief that Defendants' employment practices, described above, were unlawful and illegally discriminatory in violation of 42 U.S.C. § 1981.

**ANSWER:**

Randstad denies the allegations in Paragraph 69 of the Complaint.

**COMPLAINT ¶70:**

By and through her complaints and objections to Defendants' discriminatory practices, Plaintiff engaged in protected activity under 42 U.S.C. § 1981.

**ANSWER:**

Randstad denies the allegations in Paragraph 70 of the Complaint.

**COMPLAINT ¶71:**

Plaintiff's termination from Defendants' employment was caused by her aforementioned complaints.

44573100v.3

**ANSWER:**

Randstad denies the allegations in Paragraph 71 of the Complaint.

**COMPLAINT ¶72:**

By the conduct described above, Defendants intentionally deprived Plaintiff of the same rights enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges, of their contractual employment relationship with Defendants, in violation of 42 U.S.C. § 1981.

**ANSWER:**

Randstad denies the allegations in Paragraph 72 of the Complaint.

## THIRD CAUSE OF ACTION: WRONGFUL DISCHARGE IN VIOLATION OF NORTH CAROLINA PUBLIC POLICY BASED UPON RACE

**COMPLAINT ¶73:**

The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

**ANSWER:**

Randstad repeats its answers to Paragraph Nos. 1 through 72 of the Complaint as its answer to Paragraph 73 of the Complaint.

**COMPLAINT ¶74:**

Defendant terminated Plaintiff in discrimination against Plaintiff's race.

**ANSWER:**

Randstad denies the allegations in Paragraph 74 of the Complaint.

**COMPLAINT ¶75:**

At the time of Plaintiff's termination, she was performing her job duties at a level that met Defendants' legitimate expectations.

**ANSWER:**

Randstad denies the allegations in Paragraph 75 of the Complaint.

**COMPLAINT ¶76:**

It is the public policy of the State of North Carolina, as stated in N.C. Gen. Stat. § 143-422.2 that employees be free from discrimination on the basis of race.

**ANSWER:**

Randstad admits that the public policy of the State of North Carolina, as stated in N.C. Gen. Stat. § 143-422.2, is to protect and safeguard the right of all persons to, among other things, hold employment without discrimination on the basis of race by employers which regularly employ 15 or more employees. Randstad, however, denies any implication that it violated this or any other state or federal law and denies that it discriminated against Plaintiff based on her race.

**COMPLAINT ¶77:**

Plaintiff's wrongful discharge was in violation of North Carolina public policy.

**ANSWER:**

Randstad denies the allegations in Paragraph 77 of the Complaint.

**FOURTH CAUSE OF ACTION: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

**COMPLAINT ¶78:**

The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

**ANSWER:**

Randstad repeats its answers to Paragraph Nos. 1 through 77 of the Complaint as its answer to Paragraph 78 of the Complaint.

**COMPLAINT ¶79:**

Plaintiff is a member of a racial minority.

**ANSWER:**

Randstad admits the allegation in Paragraph 79 of the Complaint.

44573100v.3

**COMPLAINT ¶80:**

Plaintiff opposed the discriminatory practices of Defendants.

**ANSWER:**

Randstad denies the allegations in Paragraph 80 of the Complaint.

**COMPLAINT ¶81:**

Defendants intended to, and did, illegally discriminate against the Plaintiff on the basis of her race, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.

**ANSWER:**

Randstad denies the allegations in Paragraph 81 of the Complaint.

**COMPLAINT ¶82:**

Plaintiff is entitled to all of her benefits of employment, including, but not limited to, back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

**ANSWER:**

Randstad denies the allegations in Paragraph 82 of the Complaint.

**COMPLAINT ¶83:**

Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq*.

**ANSWER:**

Randstad denies the allegations in Paragraph 83 of the Complaint.

**COMPLAINT ¶84:**

Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

**ANSWER:**

Randstad denies the allegations in Paragraph 84 of the Complaint.

**COMPLAINT ¶85:**

Plaintiff is entitled to recover reasonable attorney's fees, the costs and the expenses of this action, and such interest as may be allowed by law.

44573100v.3

**ANSWER:**

Randstad denies the allegations in Paragraph 85 of the Complaint.

## FIFTH CAUSE OF ACTION: RETALIATION AND VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

**COMPLAINT ¶86:**

The foregoing allegations of this Complaint are incorporated by reference as if fully set forth herein.

**ANSWER:**

Randstad repeats its answers to Paragraph Nos. 1 through 85 of the Complaint as its answer to Paragraph 86 of the Complaint.

**COMPLAINT ¶87:**

Plaintiff is a member of a racial minority.

**ANSWER:**

Randstad admits the allegation in Paragraph 87 of the Complaint.

**COMPLAINT ¶88:**

Plaintiff opposed the discriminatory practices of Defendants.

**ANSWER:**

Randstad denies the allegations in Paragraph 88 of the Complaint.

**COMPLAINT ¶89:**

Defendants terminated Plaintiff's employment after she refused to distort information regarding Defendants' hiring and recruitment of minority candidates.

**ANSWER:**

Randstad denies the allegations in Paragraph 89 of the Complaint.

**COMPLAINT ¶90:**

Defendants intended to, and did, illegally retaliate against the Plaintiff on the basis of her race, and for opposing employment practices made unlawful by Title VII, in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

44573100v.3

**ANSWER:**

Randstad denies the allegations in Paragraph 90 of the Complaint.

**COMPLAINT ¶91:**

Plaintiff is entitled to all of her benefits of employment, including, but not limited to back pay, front pay, health insurance, life insurance, retirement benefits, and other benefits.

**ANSWER:**

Randstad denies the allegations in Paragraph 91 of the Complaint.

**COMPLAINT ¶92:**

Plaintiff is entitled to recover compensatory damages as provided by the 1964 Civil Rights Act, 42 U.S.C. § 2000e, *et seq.*

**ANSWER:**

Randstad denies the allegations in Paragraph 92 of the Complaint.

**COMPLAINT ¶93:**

Plaintiff is entitled to punitive damages as provided by the Civil Rights Act of 1991.

**ANSWER:**

Randstad denies the allegations in Paragraph 93 of the Complaint.

**COMPLAINT ¶94:**

Plaintiff is entitled to recover reasonable attorney's fees, the costs and the expenses of this action, and such interest as may be allowed by law.

**ANSWER:**

Randstad denies the allegations in Paragraph 94 of the Complaint.

**PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF PRAYS:

1.      That Plaintiff recover compensatory damages of Defendants;

2.      That Plaintiff recover punitive damages of Defendants;

3.      That Plaintiff be granted trial by jury;

4.      That Plaintiff recover of the Defendants reasonable costs and expenses, including attorney fees, in bringing this action;

5.      For such other and further relief as to the Court deems just and proper.

**ANSWER:**

Randstad admits that Plaintiff seeks the relief specified in the Prayer for Relief, but denies that Plaintiff is entitled to the relief requested or to any relief whatsoever.

## AFFIRMATIVE AND OTHER DEFENSES

Randstad further denies every allegation not expressly admitted herein and asserts the following affirmative defenses. In asserting these defenses, Randstad does not assume the burden of proof as to matters that, pursuant to law, are Plaintiff's burden to prove. Randstad reserves the right to plead any additional affirmative defenses as they become known during the pendency of this action.

## FIRST DEFENSE

Plaintiff's Complaint and each cause of action for relief alleged therein should be dismissed to the extent they fail to state facts sufficient to constitute claims upon which relief can be granted against Randstad. Additionally, Plaintiff has failed to set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, including that Randstad discharged her or took an adverse employment action against her; that Randstad treated a similarly situated employee outside of Plaintiff's protected class more favorably; that Randstad knew of the alleged protected activity; or that there is a causal connection between the alleged protected activity and any alleged adverse employment action by Randstad.

44573100v.3

**SECOND DEFENSE**

To the extent Plaintiff failed to exhaust her administrative remedies and/or failed to comply with any procedural prerequisites prior to bringing her claims, the Court lacks subject matter jurisdiction over such claims or such claims are otherwise barred.

**THIRD DEFENSE**

To the extent Plaintiff's claims are based on acts that occurred prior to any applicable statute of limitations, Plaintiff's claims are time-barred.

**FOURTH DEFENSE**

To the extent Plaintiff alleges that any individual acted in an unlawful manner, which Randstad denies, such conduct, if it occurred, was outside of the course and scope of that individual's employment, was not authorized, ratified or condoned by Randstad, and was undertaken without the Randstad's knowledge or consent. Thus, Randstad is not liable for any such conduct, if it occurred.

**FIFTH DEFENSE**

Randstad asserts that even if some impermissible motive were a factor in any employment decision concerning Plaintiff, a claim that Randstad expressly denies, the same decisions(s) would have been reached for legitimate business reasons.

**SIXTH DEFENSE**

Even if Plaintiff was treated in an unlawful manner, an allegation that Randstad expressly denies, Randstad did not have actual or constructive knowledge of such conduct.

**SEVENTH DEFENSE**

Plaintiff's claims may be barred, in whole or in part, by the doctrines of laches, waiver, and/or estoppel.

44573100v.3

**EIGHTH DEFENSE**

Plaintiff is not entitled to punitive damages because Randstad made good faith efforts to comply with Section 1981, Title VII, and all other applicable anti-discrimination laws and did not act with malice or with willful or reckless indifference to any legal rights of Plaintiff.

**NINTH DEFENSE**

Plaintiff's recovery, if any, is limited by any and all applicable caps and limitations on damages, including but not limited to the caps and limitations on damages set forth in N.C. Gen. Stat. § 1D-25 and any other state, local or federal statutes or rules.

**TENTH DEFENSE**

Subject to further proof, Plaintiff's claims may be barred, in whole or in part, by the doctrine of after-acquired evidence.

**ELEVENTH DEFENSE**

To the extent Plaintiff has failed to mitigate her alleged damages, her recovery, if any, must be reduced accordingly.

**TWELFTH DEFENSE**

Plaintiff's claims are barred because Randstad did not take any adverse employment action against Plaintiff.

**THIRTEENTH DEFENSE**

Plaintiff's Complaint, and each and every cause of action alleged therein, is barred in whole or in part, to the extent that it is asserted against an entity that never employed Plaintiff. Specifically, Randstad North America, Inc. and Randstad US, LLC never employed Plaintiff.

**FOURTEENTH DEFENSE**

Plaintiff was an at-will employee whose employment could have been terminated at any time, for any reason, with or without notice.

44573100v.3

WHEREFORE, Randstad respectfully requests that the Court dismiss with prejudice all of Plaintiff's claims against Randstad and award Randstad its reasonable attorneys' fees, costs, expenses, and any and all other relief the Court deems just and proper.

DATED: December 13, 2018

Respectfully submitted,

*RANDSTAD NORTH AMERICA, INC.,*
*RANDSTAD US, LLC, and RANDSTAD*
*PROFESSIONALS US, LLC d/b/a RANDSTAD*
*SOURCERIGHT*


By: /s Margaret M. Manos

    Margaret M. Manos
    North Carolina Bar No. 34837
    mmanos@seyfarth.com
    Benjamin D. Briggs
    Georgia Bar No. 081902 (*Special*
    *Appearance*)
    bbriggs@seyfarth.com
    SEYFARTH SHAW LLP
    1075 Peachtree Street, N.E., Suite 2500
    Atlanta, Georgia 30309-3958
    Telephone: (404) 885-1500
    Facsimile: (404) 892-7056

    Counsel for Defendants *Randstad North*
    *America, Inc., Randstad US, LLC, and*
    *Randstad Professionals US, LLC d/b/a*
    *Randstad Sourceright*

| | | |
|---|---|---|
| MICHELLE BRIEF-MCGURRIN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-CV-00131 |
| | ) | |
| v. | ) | Hon. Loretta C. Biggs |
| | ) | |
| CISCO SYSTEMS, INC., RANDSTAD | ) | Magistrate Judge L. Patrick Auld |
| NORTH AMERICA, INC., RANDSTAD US, | ) | |
| LLC, RANDSTAD PROFESSIONALS US, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | | |

**CERTIFICATE OF SERVICE**

I certify that on December 13, 2018, I electronically filed **RANDSTAD DEFENDANTS' AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S SECOND AMENDED COMPLAINT** with the Clerk of Court using the CM/ECF system, which will automatically send electronic notification of such filing to the following attorneys of record:

Michael A. Kornbluth, Esq.
Andrew J. Henson, Esq.
KORNBLUTH GINSBERG LAW GROUP, P.A.
3100 Tower Blvd., Suite 800
Durham, NC 27707
mkornbluth@KGLawNC.com
ahenson@KGLawNC.com

Frederick T. Smith
fsmith@seyfarth.com
SEYFARTH SHAW LLP
6000 Fairview Road, Suite 1200
Charlotte, North Carolina 28210
fsmith@seyfarth.com

Amanda A. Sonneborn
Thomas M. Horan
SEYFARTH SHAW LLP
233 S. Wacker Drive, Suite 8000
Chicago, Illinois 60606
asonneborn@seyfarth.com
thoran@seyfarth.com

*s/ Margaret M. Manos*
Counsel for Randstad North America, Inc.,
Randstad US, LLC, and Randstad Professionals US,
LLC d/b/a Randstad Sourceright

44573100v.3