IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MICHELLE BRIEF-MCGURRIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:18CV131 |
| | ) | |
| CISCO SYSTEMS, INC., RANDSTAD | ) | |
| NORTH AMERICA, INC., RANDSTAD | ) | |
| US, LLC, and RANDSTAD | ) | |
| PROFESSIONALS US, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

On January 16, 2018, Plaintiff initiated this employment discrimination and wrongful termination action in Superior Court of Durham County, North Carolina, against Defendant Cisco Systems, Inc. ("Cisco") and Defendants Randstad North America, Inc., Randstad US, LLC, and Randstad Professionals US, LLC (collectively "Randstad"). (ECF No. 1-1 at 2, 4, 17–19.) Defendants removed the case to this Court on February 23, 2018 on the basis of federal question and supplemental jurisdiction. (ECF No. 1 ¶¶ 7–8.) Before the Court is Randstad's motion for judgment on the pleadings. (ECF No. 23.) For the reasons stated below, this motion will be granted in part and denied in part.

## I. BACKGROUND

Plaintiff's Second Amended Complaint[1] alleges that Defendants unlawfully discriminated against her because of her race, that they retaliated against her, and that she was terminated in violation of North Carolina public policy. (ECF No. 31 ¶¶ 62–94.) Plaintiff, an African American female, is a recruitment professional, specializing in the recruitment and employment of minority candidates. (*Id.* at 1; ECF No. 31 ¶31.) Randstad is a temporary staffing agency, through which Plaintiff was employed at Cisco from June 2010 to January 2015. (*Id.* ¶¶ 3, 16–17, 49.) Throughout Plaintiff's assignment at Cisco, she alleges that she "identif[ied] systemic problems with Cisco's minority recruitment efforts," and brought those to the attention of her supervisors. (*Id.* ¶¶ 24, 30.) According to Plaintiff, after she refused her supervisor's request to "disposition" all her remaining minority candidates, thereby removing them from candidacy for employment, and refused to "cover up the . . . data" related to such action, she was terminated from her position at Cisco. (*Id.* ¶¶ 46–47, 49.)

Following Plaintiff's termination from Cisco, Plaintiff's supervisor at Randstad, Amy Laymon, stated that Randstad "would assist Plaintiff in finding employment, either at Cisco or elsewhere, in addition to investigating the circumstances under which Plaintiff was terminated." (*Id.* ¶¶ 16, 53.) In March 2015, a Randstad Human Resources ("HR") representative, Lori Sargent, interviewed Plaintiff regarding her Complaint against Cisco. (*Id.*

---

[1] Plaintiff filed a Second Amended Complaint, (ECF No. 31), after Defendant Randstad filed the present motion. The parties agreed that the amendments in Plaintiff's Second Amended Complaint "have no bearing on the issues or arguments presented in the parties' briefs" regarding Randstad's motion for judgment on the pleadings. (ECF No. 33 at 1–2.) Therefore, this Court will use Plaintiff's Second Amended Complaint as the operative pleading in this matter.

¶ 58.) At the end of their interview, Plaintiff alleges that "Ms. Sargent informed Plaintiff that if she contacted an attorney or the Equal Employment Opportunity Commission, Plaintiff would no longer be able to communicate with Randstad HR or work with Randstad in any capacity." (*Id.*)

Plaintiff's Second Amended Complaint includes five causes of action: claims of disparate treatment (Claim 1) and retaliation (Claim 2) in violation of 42 U.S.C. § 1981 ("§ 1981"); claims of disparate treatment (Claim 4) and retaliation (Claim 5) in violation of 42 U.S.C. § 2000e *et seq.* ("Title VII"); and a claim of wrongful discharge in violation of North Carolina public policy (Claim 3), pursuant to the North Carolina Equal Employment Practices Act ("NCEEPA"). (ECF No. 31 ¶¶ 62–94.) Randstad has filed an Answer, (ECF No. 39), and now moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), (ECF No. 23).

## II. STANDARD OF REVIEW

Under Rule 12(c) of the Federal Rules of Civil Procedure, "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion is generally analyzed "under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). Like a Rule 12(b)(6) motion, "[a] Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Unlike a Rule 12(b)(6) motion to dismiss, however, the Court, when deciding a motion for judgment on the pleadings, may consider the Answer. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011).

3

The factual allegations contained in the Answer "are taken as true only where and to the extent they have not been denied or do not conflict with the complaint." *Jadoff v. Gleason*, 140 F.R.D. 330, 331 (M.D.N.C. 1991). Because the plaintiff is not required to reply to the Answer, "all allegations in the [A]nswer are deemed denied." *Id.* at 332. The defendant cannot therefore "rely on allegations of fact contained only in the [A]nswer, including affirmative defenses, which contradict Plaintiffs' complaint." *Id.*

A court should grant a motion for judgment on the pleadings "only . . . if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).

### III. DISCUSSION

Randstad, in its motion for judgment on the pleadings, argues that "Plaintiff fails to state a plausible cause of action [ ] against Randstad under Section 1981, Title VII, or North Carolina state law." (ECF No. 23 at 3.) The Court will now address Plaintiff's claims against Randstad: (i) race discrimination in violation of § 1981[2] and Title VII; (ii) unlawful termination in violation of NCEEPA; and (iii) retaliation in violation of § 1981 and Title VII.

#### A. Race Discrimination

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or

---

[2] "Section 1981 claims are governed by the same evidentiary standards as Title VII claims, and the same elements must be met to establish a prima facie case." *Dove v. United Parcel Serv., Inc.*, 912 F. Supp. 2d 353, 361 (M.D.N.C. 2012).

4

privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a)(1). To prove a prima facie case of discrimination under Title VII, a plaintiff must show: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 566 U.S. 30 (2012). An adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). Although a plaintiff does not have to specifically plead every element of a prima facie case of discrimination in her complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002), she must still plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A staffing agency, such as Randstad, may be held liable for employment discrimination in violation of Title VII by directly discriminating against an employee through their own actions, or by failing to take "corrective action" to remedy discrimination by a co-employer about which they knew or should have known. *See Butler v. Drive Auto. Indus. of Am., Inc.*, 793 F.3d 404, 410 (4th Cir. 2015) (explaining joint employer doctrine); *Williams v. Grimes Aerospace Co.*, 988 F. Supp. 925, 937–38 (D.S.C. 1997) ("[W]hen an employee claims discrimination against two joint employers, she must show that [each] defendant knew or should have known of the discriminatory conduct and that it failed to take those corrective measures within its control." (second alteration in original) (internal quotation marks omitted)).

5

Although the Fourth Circuit has not addressed a joint employer's liability for discriminatory conduct by a co-employer, many district courts within this circuit, in addition to courts in other circuits, have addressed the issue. *See Velasquez v. Sonoco Display & Packaging, LLC*, No. 1:17CV865, 2018 WL 1773128, at *3–*4 (M.D.N.C. Apr. 11, 2018), *report and recommendation adopted*, 2018 WL 2016506 (M.D.N.C. Apr. 30, 2018); *Crump v. United States Dep't of Navy*, Civ. A. No. 2:13cv707, 2016 WL 901262, at *1–2 (E.D. Va. Mar. 3, 2016); *Williams*, 988 F. Supp. at 937–38; *see also Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 228–29 (5th Cir. 2015); *Whitaker v. Milwaukee Cty., Wis.,* 772 F.3d 802, 812 (7th Cir. 2014); *Lima v. Addeco*, 634 F. Supp. 2d 394, 400–01 (S.D.N.Y. 2009), *aff'd sub nom. Lima v. Adecco and/or Platform Learning, Inc.*, 375 F. App'x 54 (2d Cir. 2010). To hold an employer liable for conduct by a joint employer, a plaintiff must show that the defendant "knew or should have known of [a co-employer's] discriminatory conduct and that it failed to take . . . corrective action within its control." *Williams*, 988 F. Supp. at 937 (internal quotation marks omitted). The EEOC's enforcement guidance on this issue gives examples of some types of corrective measures a temporary employment agency may take to remedy discrimination that it knows about:

> Corrective measures may include, but are not limited to: 1) ensuring that the client is aware of the alleged misconduct; 2) asserting the firm's commitment to protect its workers from unlawful harassment and other forms of prohibited discrimination; 3) insisting that prompt investigative and corrective measures be undertaken; and 4) affording the worker an opportunity, if (s)he so desires, to take a different job assignment at the same rate of pay.

Equal Employment Opportunity Commission, EEOC Notice No. 915.002, Enforcement Guidance: Application of EEO Laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms, 1997 WL 33159161, at *11 (Dec. 3, 1997)

6

[hereinafter "EEOC Enforcement Guidance"]; *see also Signore v. Bank of Am., N.A.*, Civ. A. No. 2:12cv539, 2013 WL 6622905, at *6 (E.D. Va. Dec. 13, 2013) (quoting EEOC Enforcement Guidance).

Courts have generally denied dispositive motions where it is clear that the staffing agency knew or should have known about the discrimination before or at the time of the termination. *See Velasquez*, 2018 WL 1773128, at *4 (denying motion to dismiss when plaintiff complained of discrimination in the meeting when he was terminated from his placement); *Byorick v. CAS, Inc.*, 114 F. Supp. 3d 1123, 1127–28 (D. Col. 2015) (denying staffing agency's motion to dismiss when plaintiff "expressed her concern" multiple times "about possible retaliatory actions"); *Signore*, 2013 WL 6622905, at *6 (refusing to dismiss claim against a staffing agency that "told Plaintiff to be quiet and endure age discrimination when she complained").

### 1. *Direct Discrimination by Randstad*

Randstad argues that Plaintiff has failed to sufficiently allege that it took any adverse employment action against her, or that Randstad treated any other employee outside her protected class differently. (ECF No. 24 at 12–14.) Plaintiff argues, in response, that Randstad's alleged involvement with her termination from Cisco constituted adverse employment actions. (ECF No. 26 at 15–16.)

Plaintiff, in her Complaint, makes the following allegations regarding the actions of Randstad leading up to her termination from Cisco and shortly thereafter:

> 16. Plaintiff remained payrolled through Randstad for the entirety of her employment with Defendants. Randstad also retained the authority to hire and fire Plaintiff throughout her employment with Defendants, and maintained authority to discipline Plaintiff

7

for performance-related issues. At all times while working for Defendants, Plaintiff reported to supervisors at both Randstad and Cisco—Amy Laymon and Julie Turner at Randstad, and Mark Woodrum, Anne Grassian and others at Cisco.

. . .

19. Despite these indications of growing responsibility and valued contributions, Plaintiff's position was never formally converted to a Cisco employee. The Caucasian Randstad contractors who began work at Cisco at or around the same period of time as Plaintiff were converted to Cisco employees. Moreover, numerous Caucasian Randstad contractors that began working at Cisco *after* Plaintiff were converted to full-time employees.

. . .

43. Plaintiff received a call [in early January] from a Randstad representative, Julie Turner, and was told that Ms. Grassian would not approve a quick transition to the new role in [Cisco's Inclusion & Collaboration ("I&C") team], and therefore Plaintiff lost the accepted position because I&C needed someone to start in January 2015. Plaintiff spoke with Ms. Grassian who stated she now remembered the conversation with Ms. Little, and when pressed stated she told Ms. Little she would need more time for Plaintiff's transition, and could not let her transition to another position until Summer of 2015.

44. Plaintiff followed up with Julie Turner who stated that she spoke with Amy Laymon and confirmed that Ms. Grassian had no authority to hold Plaintiff back from getting a new position and that she would update Kit Little. Ms. Laymon stated she would ask Kit Little if the end of January would work for Plaintiff to transition to the team. Plaintiff agreed to that date.

. . .

49. On or about January 26, 2015, Plaintiff was informed that she was terminated from her position with Defendants. Plaintiff was informed that she was laid off due to lack of funding. However, this ran contrary to Ms. Grassian's promise that Plaintiff's position was safe at least until August of that year.

. . .

8

> 53. Following Plaintiff's termination from Cisco, and her internal efforts to find replacement employment within Cisco, Randstad indicated that it would assist Plaintiff in finding employment, either at Cisco or elsewhere, in addition to investigating the circumstances under which Plaintiff was terminated. Specifically, Amy Laymon informed Plaintiff that she would attempt to find other opportunities within Cisco for Plaintiff.

(*Id.* ¶¶ 16, 19, 43, 44, 49, 53.) These allegations do not support the argument that Randstad took any adverse action against Plaintiff or that Randstad treated any other employee outside Plaintiff's class differently. (*See id.*) Plaintiff thus has failed to sufficiently allege direct action by Randstad to support a claim of discrimination based on race against Randstad. (*See id.* ¶¶ 49–51, 53.)

While Plaintiff includes allegations regarding the "Caucasian Randstad contractors," such allegations fail to indicate whether Randstad "was . . . responsible for the failure to convert Plaintiff to a formal Cisco employee." (*Id.* ¶¶ 19, 59; ECF No. 26 at 15.) Further, Plaintiff's allegation that she "was informed that she was terminated" does not plausibly allege that Randstad participated in her termination. (ECF No. 31 ¶ 49.) Given the above allegations, the Court is unable to see what role, if any, Randstad played in Plaintiff's termination from Cisco. *See Elliot v. Oldcastle Lawn & Garden, Inc.*, No. 2:16-cv-01929-DCN, 2017 WL 1206408, at *3 (D.S.C. March 31, 2017) (dismissing a discrimination claim against a staffing agency when the plaintiff "at no point . . . specif[ied] what role [the agency] played in his termination"). Construed in the light most favorable to Plaintiff, Plaintiff has failed to allege that Randstad subjected her to an adverse employment action because of her race or treated any other employee outside Plaintiff's protected class differently.

### 2. *Joint Employer Liability*

Plaintiff next argues that because Randstad knew or should have known about Cisco's discriminatory actions and failed to take corrective actions, Randstad is therefore liable for race discrimination. (*See* ECF No. 26 at 10–11, 12–13.) Randstad argues in response that it did not know, and had no reason to know, about Cisco's allegedly discriminatory behavior until after Plaintiff had been terminated from her position at Cisco. (ECF No. 27 at 6–7.)

Plaintiff does not specify in her Complaint exactly when she informed Randstad of the alleged discrimination to which she was being subjected. The allegations that describe the context of her termination from Cisco do not mention Randstad or any Randstad personnel. (ECF No. 31 ¶¶ 47–53.) As shown in the allegations quoted above, (*see supra* at 8–9), Plaintiff only mentions that she informed Randstad of her alleged discrimination "[f]ollowing [her] termination from Cisco." (*Id.* ¶ 53.) These allegations, when taken as true and with all reasonable inferences in Plaintiff's favor, do not show that Randstad knew of Cisco's alleged discrimination before Plaintiff was terminated on January 26, 2015.

Plaintiff further argues that, due to the "close nature of the relationship between Randstad and Cisco," Randstad should have known of Cisco's discriminatory conduct. (ECF No. 26 at 10–11.) Specifically, Plaintiff points to "Cisco's systematic hiring of white female temporary Randstad employees to full time positions, concurrent with its refusal to hire Plaintiff full time, even after a number of years o[f] service at Cisco, [which] was inherently suspect such that Randstad knew or should have known Cisco's hiring practices were discriminatory." (*Id.* at 10 (quoting ECF No. 20 ¶ 58).) Plaintiff also argues that Randstad should have known "that Plaintiff was being treated unfairly" when they received notice that

10

Ms. Grassian, one of Plaintiff's supervisors at Cisco, had blocked Plaintiff's reassignment to another department. (*Id.*)

Though Plaintiff alleges that Randstad "should have known Cisco's *hiring* practices were discriminatory," (ECF No. 31 ¶ 59 (emphasis added)), Plaintiff's claims only involve her termination by Cisco, and Randstad's and Cisco's alleged subsequent retaliation. (*See* ECF No. 31.) Therefore, the allegations about Cisco's general hiring practices do not create a reasonable inference that Randstad knew or should have known that Cisco's termination of Plaintiff was discriminatory. In addition, Plaintiff's argument that Randstad should have known "that Plaintiff was being treated unfairly" is similarly unpersuasive. (*See* ECF No. 26 at 10.) Accordingly, Plaintiff's allegations are insufficient to plausibly state a claim that Randstad should have known that Plaintiff was subject to discriminatory treatment by Cisco because of her race.

Because Plaintiff has failed to allege direct discrimination by Randstad and failed to plausibly allege sufficient facts that Randstad knew or should have known that Plaintiff was discriminated against because of her race, Randstad's motion for judgment on the pleadings will be granted as to Plaintiff's § 1981 and Title VII claims for disparate treatment (Claims 1 and 4), and these claims will be dismissed.

**B. Wrongful Termination in Violation of North Carolina Public Policy**

Plaintiff's third cause of action is for "wrongful discharge in violation of North Carolina public policy based upon race." (ECF No. 31 ¶¶ 73–77 (emphasis omitted).) NCEEPA, the North Carolina state law on which Plaintiff bases this claim, states:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold

11

> employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143-422.2(a). North Carolina courts, when interpreting NCEEPA, "look to federal decisions for guidance in establishing evidentiary standards and principles of law to be applied in discrimination cases." *Abels v. Renfro Corp.*, 436 S.E.2d 822, 827 (N.C. 1993) (quoting *Dep't of Corr. v. Gibson*, 301 S.E.2d 78, 82 (N.C. 1983)); *see also Donovan v. Bragg Mut. Fed. Credit Union*, No. 5:18-CV-148-FL, 2019 WL 189000, at *5 (E.D.N.C. Jan. 14, 2019) (applying Title VII doctrine to a claim brought under NCEEPA). NCEEPA thus creates a private state law cause of action for "wrongful discharge." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000).

This Court, in discussing Plaintiff's claims of race discrimination under § 1981 and Title VII above, has addressed Plaintiff's NCEEPA wrongful discharge claim. The Complaint failed to allege that Randstad played any role in the termination of Plaintiff's position from Cisco. (*See* ECF No. 31 ¶¶ 49–53.) The Complaint also failed to sufficiently allege that Randstad knew or had reason to know that Plaintiff's termination from Cisco was based on discriminatory factors. (*See id.*) Because the Court must apply the same facts and legal standards to Plaintiff's NCEEPA claim as were applied to her § 1981 and Title VII claims, *see Abels*, 436 S.E.2d at 827, Randstad's motion for judgment on the pleadings as to Plaintiff's NCEEPA claim (Claim 3) must likewise be granted.

**C. Retaliation**

To establish a claim of retaliation pursuant to § 1981[3] and Title VII, a plaintiff must prove "(1) that she engaged in a protected activity, . . . (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc) (internal quotation marks omitted). A "protected activity" may include, among other things, "participating in an ongoing investigation or proceeding under Title VII," or "opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Actions that constitute "participation" include "(1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* (citing 42 U.S.C. § 2000e-3(a)). Further, an "adverse employment action," for the purposes of a retaliation claim, is an action "that a reasonable employee would have found . . . materially adverse," or an action which "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks omitted).

Plaintiff argues that Randstad retaliated against her when they threatened to terminate her if she consulted with an attorney or the EEOC regarding her discrimination complaint. (ECF No. 26 at 17–18.) Specifically, Plaintiff alleges in her Complaint:

> Sometime in that same week of March [10,] 2015, Randstad HR representative Lori Sargent contacted Plaintiff regarding her complaint [of discrimination against Cisco]. Ms. Sargent

---

[3] "A prima facie retaliation claim under . . . § 1981 has the same elements [as a Title VII claim]." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (en banc).

> informed Plaintiff that her role was to represent Plaintiff's interests, and she proceeded to interview Plaintiff. At the end of the call, Ms. Sargent informed Plaintiff that if she contacted an attorney or the Equal Employment Opportunity Commission, Plaintiff would no longer be able to communicate with Randstad HR or work with Randstad in any capacity.

(the "March 2015 allegation") (ECF No. 31 ¶ 58.) Thus, according to Plaintiff her discrimination complaint constituted "protected activity," and the threat of termination if she pursued a formal claim constituted an "adverse employment action." (ECF No. 26 at 18.)

Randstad's only argument in response to the March 2015 allegation of retaliation is that Plaintiff does not explicitly base her retaliation claim on that particular allegation in the Complaint. (ECF No. 27 at 10.) According to Randstad, the portion of Plaintiff's complaint that states her § 1981 and Title VII claims for retaliation only alleges that "Plaintiff's termination from Defendants' employment was caused by her [protected activity]" and that "Defendants terminated Plaintiff's employment after she refused to distort information regarding Defendants' hiring and recruitment of minority candidates."[4] (ECF No. 31 ¶¶ 71, 89.) Because Plaintiff does not explicitly base her retaliation claim on the March 2015 allegation, Randstad argues that Plaintiff is attempting to impermissibly "amend her Complaint through argument in her brief." (ECF No. 27 at 10.)

Randstad's argument is, however, unavailing. In considering a motion for judgment on the pleadings or a motion to dismiss, the Court "accept[s] as true all well-pleaded allegations

---

[4] Randstad is correct in arguing that these allegations would not support a retaliation claim against Randstad. (*See* ECF No. 24 at 14–15.) As this Court concluded in relation to Plaintiff's § 1981 and Title VII claims for discrimination based on race, Plaintiff's Complaint did not sufficiently allege that Randstad played a role in Plaintiff's termination from Cisco, or that Randstad knew of any allegation of discrimination at the time of Plaintiff's termination. (*See* ECF No. 31 ¶¶ 49–53.)

and view[s] the complaint in the light most favorable to the plaintiff." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). Both of Plaintiff's retaliation claims "incorporate[ ] by reference" all the "foregoing allegations of th[e] Complaint . . . as if fully set forth [t]herein." (ECF No. 31 ¶¶ 66, 86.) Because both of Plaintiff's retaliation claims incorporate the March 2015 allegation "as if fully set forth [t]herein," (*id.* ¶¶ 66, 86), Plaintiff has in fact based her retaliation claims on the March 2015 allegation as well.

Based on the allegations in the Complaint, Plaintiff engaged in a "protected activity" when she complained of Cisco's alleged discriminatory termination to Ms. Sargent, a Randstad HR representative. (*Id.* ¶ 58); *see Laughlin*, 149 F.3d at 259 (including "oppositional conduct" as a "protected activity"). Ms. Sargent committed an adverse employment action against Plaintiff when she allegedly threatened to terminate Plaintiff's employment if Plaintiff engaged in an additional protected activity: pursuing a Title VII claim with the EEOC or an attorney. (*See* ECF No. 31 ¶ 58); *see White*, 548 U.S. at 68; *Laughlin*, 149 F.3d at 259 (including "making a charge" as a protected activity). Such a threat may be considered an "adverse employment action" because it may dissuade a reasonable employee from "making or supporting a charge of discrimination." *White*, 548 U.S. at 68. Further, there is clearly a causal connection between Plaintiff's complaint and the alleged threat, because they allegedly occurred as part of the same conversation. (*See* ECF No. 31 ¶ 58.) Plaintiff has therefore alleged sufficient facts to support a claim for retaliation against Randstad that is plausible on its face. Accordingly, Randstad's motion for judgment on the pleadings as to Plaintiff's retaliation claims will be denied.

## IV. CONCLUSION

Based on the above, the Court concludes that Randstad is entitled to judgment on the pleadings as to Plaintiff's claims of discrimination pursuant to § 1981 and Title VII (Claims 1 and 4), and such claims will be dismissed. Randstad is also entitled to judgment on the pleadings as to Plaintiff's NCEEPA claim for wrongful termination in violation of public policy (Claim 3), and such claim will be dismissed. The Court further concludes, however, that Randstad's motion for judgment on the pleadings as to Plaintiff's claims of retaliation under § 1981 and Title VII (Claims 2 and 5) will be denied, and these claims will not be dismissed.

For the reasons stated herein, the Court enters the following:

## ORDER

IT IS THEREFORE ORDERED that Randstad's Motion for Judgment on the Pleadings, (ECF No. 23), is GRANTED IN PART and DENIED IN PART. The motion is GRANTED as to Claims 1, 3, and 4, and those claims are hereby DISMISSED. The motion is DENIED as to Claims 2 and 5.

This, the 25th day of March 2019.

/s/Loretta C. Biggs
United States District Judge